UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LEONARD N.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00051-SEB-KMB |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Leonard N. petitioned the court for judicial review of the Commissioner of the Social Security Administration's ("SSA") final decision denying his May 6, 2019, application for disability insurance benefits ("DIB"). The case was referred pursuant to 28 U.S.C. § 636(a) and (b) to Magistrate Judge Kellie M. Barr who issued a Report and Recommendation that the Commissioner's decision be reversed and the case remanded. The Commissioner has filed a timely objection to the Report and Recommendation. For the reasons explained in this Order, we OVERRULE the Commissioner's objections and accept the Report and Recommendation by the Magistrate Judge to REVERSE and REMAND the decision of the Commissioner.

I.     **STANDARDS OF REVIEW**

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions. The Plaintiff will therefore be referred to by his first name.

1

To be eligible for DIB, a claimant must have a disability as defined by 42 U.S.C. § 423. The statute defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(a). In general, the claimant bears the burden of providing evidence that he is disabled, and he must show through record evidence that an impairment from which he suffers meets all applicable criteria. *See, e.g., Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The Commissioner, acting by and through the Administrative Law Judge ("ALJ"), conducts a five-step analysis to make an eligibility determination: (1) if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors; (2) if the claimant does not have a "severe" impairment (*i.e.*, one that significantly limits his ability to perform basic work activities), he is not disabled; (3) the Commissioner then determines whether the claimant's impairment or a combination thereof meets or medically equals any impairment appearing in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled;[2] (4) if the claimant can perform his past relevant work given his residual functional capacity ("RFC"), he is not disabled; and

---

[2] Before continuing to step four, the ALJ must assess the claimant's residual functional capacity by "incorporate[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015)).

(5) if the claimant can perform any other work in the national economy, he is not disabled. *See* 20 C.F.R. § 404.1520.

In reviewing the decision of the ALJ, the district court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Under this deferential standard of review, we must affirm if no error of law occurred and the ALJ's factual findings are supported by substantial evidence. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). In addition, the district court will "determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). We confine the scope of our review to the rationale offered by the ALJ. *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When considering a party's specific objections to a Magistrate Judge's Report and Recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). *De novo* review requires a re-examination of the case with a fresh set of eyes and "an independent judgment of the issues." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th

3

Cir. 1984). After review, the court is empowered to adopt, reject, or modify the recommendations of the Magistrate Judge. Fed. R. Civ. P. 72(b).

## II. FACTUAL BACKGROUND[3]

### A. Medical Evidence of Gout and Foot Pain

By 2013, Leonard was diagnosed with gout and, in August 2013, began treating this condition with Allopurinol. Docket No. 10-15 at 5. In 2014, Leonard began taking Tramadol, a medication for gout. Docket No. 10-9 at 24. Leonard was seen by John Manire, DO, a consultative examiner, in 2015. Docket No. 10-11 at 61. Dr. Manire's report indicated that Leonard was experiencing pain in his right foot from osteoarthritis. *Id.* Dr. Manire also reported that Leonard's gait was "mildly antalgic . . . and not within normal limits," that Leonard was "able to walk . . . with mild difficulty," and that Leonard was unable to "stand on his left leg alone secondary to left foot pain." *Id.* at 64. He further stated that Leonard "has moderate challenge to his activities for daily living, independence, and employment due to his osteomyelitis, gout, neuropathy, and osteoarthritis" but "[s]urgeries are planned to correct osteomyelitis and neuropathy." *Id.*

In 2016, Leonard was examined by Theresa Stroot, DO, who noted his gout and arthritis from his past medical history and prescribed the continued use of Tramadol. Docket No. 10-15 at 27. He reported that he engaged in daily exercise, and, later that year, that he was "[w]orking pretty hard cleaning for his daughter's business." *Id.* at 23, 27. Two

---

[3] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the court's disposition of this case are discussed below.

4

years later, in 2018, Leonard was seen by Emily Rench, FNP, for treatment of gout. *Id.* at 33, 36. He was given in-office medication injections as well as a steroid prescription. *Id.* at 36. Leonard was seen again by FNP Rench in 2019 for treatment for gout pain in both feet. *Id.* at 47.

### B. Procedural History

In May 2019, Leonard applied for DIB, alleging an onset date of January 1, 2013. Docket No. 10-6 at 11. His application was initially denied and again upon reconsideration. Docket No. 10-4 at 8, 18. ALJ William Zuber conducted a hearing on May 27, 2020, at which Leonard and a vocational expert testified. Docket No. 10-2 at 36–72. Leonard was represented by counsel and testified as follows in response to questioning by the ALJ:

> Q: Were you on any kind of medication for the gout at the time?
> A: They told me just to take -- what is it? Bufferin or something? I got -- you buy it over the counter. I buy it over the counter and pop a bunch of those. But I don't like really taking pills. I try not to take any of that stuff.

*Id.* at 56.

ALJ Zuber issued his decision on June 9, 2020 denying disability benefits to Leonard. *Id.* at 30. Applying the five-step analysis (20 C.F.R § 404.1520), the ALJ first determined that Leonard had not engaged in substantial gainful activity during the period from the alleged onset date through his date last insured of December 13, 2017. Docket No. 10-2 at 26. At step two, the ALJ ruled that Leonard "had the following severe impairment: chronic anticoagulant therapy." *Id.* At step three, the ALJ found that Leonard did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in the SSA's Listings. *Id.* at 27; s*ee* 20 C.F.R. Part


404, Subpart P, Appendix 1. The ALJ then determined Leonard's RFC, finding that he was capable of "perform[ing] a full range of work at all exertional levels but with the following non-exertional limitations: he can have only occasional exposure to dangerous machinery and unprotected heights." Docket No. 10-2 at 27. At step four, the ALJ determined that Leonard was capable of performing past relevant work as a cashier/checker. *Id.* at 29. Because Leonard had not met his burden at step four, the ALJ did not reach step five, concluding that Leonard was not disabled between January 1, 2013, and December 31, 2017. *Id.* at 29–30.

The Appeals Council denied Leonard's request for review, and the ALJ's decision thus became the Commissioner's final decision, subject to judicial review pursuant to 42 U.S.C. § 405(g). *Id.* at 14. On April 7, 2022, Leonard timely filed his complaint seeking judicial review of the Commissioner's denial of benefits. Docket No. 1. After full briefing of the issues by the parties, the case was referred to Magistrate Judge Barr for her determination. For the reasons explicated in her report, she recommended the reversal and remand of the ALJ's decision that Leonard is not disabled. Docket No. 19. The Commissioner has filed objections to the Magistrate Judge's Report and Recommendation. Docket No. 20. We address each of these objections below.

### III.   DISCUSSION AND DECISION

On appeal, Leonard assigns three errors as effecting the ALJ's decision: First, the ALJ erred at step two by failing to find additional severe medically determinable impairments, which omission negatively impacted the RFC determination. Docket No. 13 at 11. Second, the ALJ erroneously rejected the medical findings of Dr. Manire, which also

negatively impacted the RFC determination. *Id.* Third, in making these determinations, the ALJ acted without lawful authority from the Commissioner because the statute that insulates the Commissioner from removal from office by the President (for reasons other than neglect of duty or malfeasance) renders the entirety of the SSA's statutory structure unconstitutional. *Id.* at 13.

### A. Step Two Analysis

We begin with a review of the step two determination, which excluded consideration of Leonard's osteomyelitis, gout, and osteoarthritis as severe impairments, finding only that "chronic anticoagulant therapy" was a severe impairment and understating its significance by failing to refer to it accurately as a "deep vein thrombosis requiring chronic anticoagulation therapy." Docket No. 13 at 11. This error warrants a remand of the case because, according to Leonard, it resulted in the ALJ's failure to fully and fairly consider his impairments in reaching his RFC determination. *Id.*

The Magistrate Judge ruled that while "the ALJ's classification of Leonard's severe impairment at Step Two as 'chronic anticoagulant therapy' does not warrant remand on its own," remand ultimately is required because "the Court cannot say that the ALJ properly considered all of Leonard's severe and non-severe impairments, the objective medical evidence, his symptoms, and his credibility at later stages of his analysis and when formulating the RFC." Docket No. 19 at 8.

A step two determination turns on whether any of the claimant's medical conditions constitute a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). As with all

7

the steps in the analysis (except for the fifth and final), the claimant bears the burden of proof at step two. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023). Step two is regarded as a threshold determination; if the ALJ finds any condition meets this hurdle with even one severe impairment, the analysis continues to step three. 20 C.F.R. § 404.1520(a)(4), (4)(ii). However, if ALJ fails to consider all severe and non-severe impairments in their RFC determination, even though the ALJ's analysis continues, remand may be warranted. *See Curvin v. Colvin*, 778 F.3d 645, 649–50 (7th Cir. 2015). Thus, an error at step two may be a "harbinger of errors beyond step two." *Leslie T. v. Saul*, 2020 WL 6586658, at *3 (S.D. Ind. Oct. 19, 2020), adopted by 2020 WL 6583088 (S.D. Ind. 2020).

Here, the ALJ concluded that Leonard's "chronic anticoagulant therapy" constitutes a "severe medical impairment." Docket No. 10-2 at 26. Leonard's claim thus successfully passed the step-two threshold. Continuing his analysis, the ALJ moved on to step three and beyond. *Id.* at 27–30. We agree with the Magistrate Judge's opinion that referring to Leonard's condition as "chronic anticoagulant therapy" and deeming it a severe impairment does not, by itself, warrant remand. However, as the Magistrate Judge concluded, this step two mischaracterization led to the ALJ's failure to include all of Leonard's severe and non-severe impairments in the RFC determination. *See Curvin*, 778 F.3d at 649–50 ("What is more, even if there were such an error at step 2, it would have been harmless because the ALJ properly considered all of Curvin's severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3.'"). After rejecting gout and foot pain as "severe impairments," the

8

ALJ in formulating Leonard's RFC did not incorporate the entirety of the medical evidence, Leonard's symptoms, and Leonard's credibility as it related to such non-severe impairments. The Magistrate Judge's determination is therefore accurate as to both the facts and the law.

### B. ALJ's RFC Evaluation

When an ALJ determines that the claimant's severe impairments do not meet or medically equal a condition in the SSA's Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, a review of the claimant's RFC follows. *Crowell v. Kijakazi*, 72 F.4th 810, 814–815 (7th Cir. 2023). The RFC is a determination of a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 416.945. "When conducting the RFC analysis, 'an ALJ must include all of a claimant's limitations supported by the medical record.'" *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quoting *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021)). However, "an ALJ need only include limitations that are supported by the medical record." *Id.*

Leonard contends that the ALJ's failure to regard some conditions including gout and foot issues as severe at step two led to their exclusion in his RFC analysis. Docket No. 13 at 11. He also faults the ALJ's rejection of Dr. Manire's examination as lacking the support of substantial evidence to do so. *Id.* at 11–12. The Commissioner defends the ALJ's rejection of Leonard's step two claims as well as his evaluation of Dr. Manire's opinion. Docket No. 14 at 16–19. The Commissioner further objects to the Magistrate Judge's Report and Recommendation for its failure to require Leonard to prove that remand would

9

change the result of the ALJ's conclusion, arguing that that any error arguably made by the ALJ was harmless. Docket No. 20 at 7. We address each of these issues below.

### 1. Gout and Foot Problems

The Magistrate Judge faulted the ALJ's analysis on two bases: its failure to explain "why Leonard's current condition significantly undermines the record evidence or allegations made," including on his gout and foot issues, and to explain the conclusion that Leonard's lack of treatment for gout undermined his claim. Docket No. 19 at 9. The Commissioner argues in her objection that the Magistrate Judge applied an incorrect standard of review and erred in holding that the ALJ cannot use evidence outside of the relevant time period and that such evidence is relevant here and supports the ALJ's conclusions. Docket No. 20 at 1–2.

The ALJ's RFC analysis authorized work at any exertional level but with "only occasional exposure to dangerous machinery and unprotected heights." Docket No. 10-2 at 26. In reaching this conclusion, the ALJ focused solely on "chronic anticoagulant therapy" impairments. *Id.* at 28–29. Only in passing does the ALJ make mention of gout and foot pain or any other potential impairments resulting from these conditions. *See* Docket No. 10-2 at 27–29. The ALJ explains his reasons for rejecting work limitations due to gout and foot pain at step two as follows:

> His first complaints of foot pain are from May 2013 when his x-rays were unremarkable aside from some mild degenerative change and a family history of gout was first noted. However, a mild tibial fracture was found, and he was in a cast boot, but this injury healed. He continued to complain of pain, but imaging showed no significant problems beyond some arthritis. He started Allopurinol for gout in August 2013, but stated at the hearing that he does not take medication to treat gout because he does not like taking it.

10

> He reported daily exercise in June 2016, and reported heavy cleaning for his daughter's business in August 2016. It was noted that same month after complaints of gout pain that he was no longer taking a daily control medication. His representative noted a mention of mildly antalgic gait and leg weakness, but this is from a consultative examination in 2015. He has not had any treatment for leg issues in recent years, and there is no indication that he has any leg issues currently.

Docket No. 10-2 at 26–27 (citations omitted).

In his testimony at the hearing, Leonard stated that he avoided taking his gout medication. The ALJ improperly construed this fact to undermine Leonard's description of his symptoms. An ALJ "must not draw inferences about a claimant's lack of treatment without exploring the reasons for the inaction." *Ray v. Berryhill*, 915 F.3d 486, 490–91 (7th Cir. 2019) (finding reversible error where the ALJ failed to inquire into why the claimant missed a spine appointment and "assumed that he did not attend because his symptoms were not serious"). Here, the ALJ asked no questions at the hearing inquiring into why Leonard does not like taking pills, apparently assuming that he did so because his symptoms were less severe than he had maintained. *See* Docket No. 10-2 at 56. Obviously, there are a multitude of possible reasons a person may decline their medication, even when suffering from severe symptoms, *i.e.,* undesirable side effects, their expense, lack of access, etc. The ALJ did not explore or inquire as to any possibilities, concluding that the lack of medication treatment was based on lack of disabling symptoms. Accordingly, the ALJ's determination lacks the backing of substantial evidence.

In addition, the ALJ rejected Leonard's foot problems as a severe impairment based on any treatment sought for them "in recent years" and has lacking "any leg issues currently." Docket No. 10-2 at 27. This explanation reflects evidence that post-dated the

11

point where Leonard was last insured. The ALJ is required to focus on whether Leonard was disabled between his alleged onset date and his date last insured, to wit, January 1, 2013, and December 31, 2017. *See McHenry v. Berryhill*, 911 F.3d 866, 869 (7th Cir. 2018). Evidence dating outside this time period is relevant only to determining the credibility of the claimant, *see Thompson v. Colvin*, 2013 WL 1718768, at *11 (N.D. Ill. Apr. 18, 2013) ("[T]he ALJ's discussion of Ms. Thompson's daily activities after the relevant time period bolstered the credibility finding"), "the present state of a claimant's health is neither here nor there for purposes of making the disability determination. It is the state of his health during the relevant period that matters." *Robinson v. Berryhill*, 2018 WL 5729912, at *2 (N.D. Ind. Nov. 2, 2018); *Cf. Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) (finding that evidence post-dating the claimant's DLI suggested that the claimant was currently disabled but provided no basis for a disability finding during the relevant time period).

 Here, the ALJ's analysis relates to an inapplicable time period. Whether Leonard had leg issues in 2020, when the ALJ's hearing occurred and decision was handed down, is inapposite to the disability issue before the ALJ. How Leonard's current condition illuminates or informs Leonard's condition between 2013 and 2017 is not explained. This lack of explanation prevents any "logical bridge" from being established between Leonard's current health conditions and the disability onset period. *Gedatus*, 994 F.3d at 900. This was an error in the ALJ's analysis, as determined by the Magistrate Judge as well.

 The ALJ also concludes that Leonard's gout and foot issues were not severe because he had not sought treatment in recent years. Docket No. 10-2 at 27. The record, in fact,

12

reflects otherwise. On June 6, 2018, Leonard was seen by a family nurse practitioner who gave him multiple medications for gout pain including by injection in office. Docket No. 10-15 at 36. Leonard again sought treatment for gout pain in 2019. Docket No. 10-15 at 46. The ALJ's characterization of this evidence of treatment as not occurring in "recent years" is at best misleading, if not inaccurate.

The Magistrate Judge concluded that Leonard's current condition and his purported lack of treatment in recent years were not a sufficient rationale for excluding gout and foot pain from the RFC formulation. The ALJ's conclusion was thus not supported by substantial evidence. We agree with and therefore adopt the Magistrate Judge's recommendation.

### 2. Dr. Manire's Report

The Magistrate Judge determined that in rejecting Dr. Manire's report, the ALJ improperly relied on Leonard's current health, misstated the record as to which of Leonard's various medical conditions were treated surgically, and otherwise misrepresented the substance of Dr. Manire's report. Docket No. 19 at 9–10. The Commissioner objects to these findings and defends the ALJ's rejection of Dr. Manire's report as proper. Docket No. 20 at 5–7. The Commissioner also faults the Magistrate Judge's use of an incorrect standard of review in discussing Dr. Manire's report. *Id.* at 1–2. For the following reasons, we overrule these objections.

First, the ALJ found that Dr. Manire's 2015 findings were unpersuasive because they were "not supported by current evidence" and because the examination had occurred five years prior to the ALJ's decision. Docket No. 10-2 at 29. As noted above, focusing on

13

Leonard's condition at the time of the ALJ's decision-making is not relevant. Despite the fact that the report was five years old at the time of the ALJ's decision, Dr. Manire's examination of Leonard had occurred squarely within the relevant time period thereby reflecting Leonard's health during the relevant time period. The ALJ's failure to explain his opinion that the lack of evidence showing Leonard's current disability based on prior workplace limitations destroys the logical bridge that is otherwise necessary between the evidence and his conclusions.

Second, the ALJ rejected the report because it reflected Leonard's condition prior to a surgery Leonard had scheduled which, according to the ALJ, would "correct the problems he was having at the time of the examination." *Id*. This description mischaracterizes the record. Rather than promising to resolve all of Leonard's medical issues by the surgery, Dr. Manire stated in his report that the surgery would "correct the osteomyelitis and neuropathy"—problems that were medically unrelated to his feet and legs, which were affected by gout and osteoarthritis. Docket No. 10-11 at 64. Conditions causing workplace limitations cannot be disregarded or discounted on the basis of impending surgery that will not or does not encompass those conditions. The ALJ had no accurate basis for discrediting Dr. Manire's findings.

Moreover, we agree with the Magistrate Judge that the ALJ misstated the record by finding that Dr. Manire "did not opine as to the claimant's limitations," Docket No. 10-2 at 29. Dr. Manire did in fact state that Leonard faced "moderate challenges to his activities of daily living, independence, and employment due to osteomyelitis, gout, neuropathy, and

14

osteoarthritis." Docket No. 10-11 at 64. Though Dr. Manire's statement was imprecise as to particular limitations, it is clearly true that Dr. Manire provided such opinion evidence.

For these reasons, we agree with the Magistrate Judge in concluding that the ALJ did not adequately consider Dr. Manire's report and the ALJ's findings were not supported by substantial evidence.

### 3.  Harmless Error

The Commissioner further objects to the Report and Recommendation on the grounds that, even if error were committed by the ALJ, it was harmless because the plaintiff has failed to establish that the result on remand would be different. Docket No. 20 at 7. "The doctrine of harmless error indeed is applicable to judicial review of administrative decisions." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Where the Court can "predict with great confidence what the result of remand will be," the Court will not remand where the Court is "convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). That the ALJ *might* reach the same conclusion is not enough to avoid reversal. *Spiva*, 628 F.3d at 353. Remand is warranted where, "had [the ALJ] considered [the evidence] carefully, [the ALJ] might well have reached a different conclusion." *Id.*

Here, we are unable to say with great confidence that the result on remand will be the same. Dr. Manire's report stated that Leonard had "right foot pain from osteoarthritis," had a "mildly antalgic gait . . . not within normal limits," and could not "stand on the left leg alone secondary to left foot pain." Docket No. 10-11 at 61, 64. Had the ALJ properly considered Leonard's foot issues and properly included Dr. Manire's report, he arguably

15

would have found that these "moderate challenges to . . . employment" imposed greater limitations on Leonard's RFC than found in the decision. A reasonable person might determine, contrary to the ALJ's step four finding, that someone with such limitations may not be able to work as a cashier/checker, Docket No. 10-2 at 29, due to potential requirements of standing and walking. See *Spiva*, 628 F.3d at 352 ("It is not obvious that a person who hears evil spirits can respond to customers' requests for help in finding particular items that they want to buy, which is a component of the job of stocking shelves in a retail store."). Lacking such confidence in the outcome of a remand, we hold that the ALJ's errors were not harmless and that remand is therefore warranted.

### C. OTHER ARGUMENTS

The Magistrate Judge in applying the *Chenery* Doctrine concluded that the Court was foreclosed from affirming the ALJ's decision based on the Commissioner's argument that ALJ's decision at step two failed to satisfy the twelve-month durational requirement. Docket No. 19 at 10–11. The *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced." *Parker v. Astrue,* 597 F.3d 920, 922 (7th Cir. 2010); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943). The ALJ clearly did not rely on duration in its decision; no such mention is included in the decision beyond a boilerplate reference. Docket No. 10-2 at 26–30. The Commissioner's belated attempt to secure an affirmance of the ALJ's opinion based on the duration requirement is impermissible. In her objection, the Commissioner states that the *Chenery* doctrine does not apply where harmless error can be found. Docket No. 20 at 5. However, because we cannot say with great confidence that the result will remain the same on

remand, the harmless error doctrine saves neither the ALJ's decision nor the Commissioner's *Chenery*-prohibited argument.

Finally, Leonard challenges the structure of the SSA as unconstitutional, arguing that the ALJ had no lawful authority to issue any decision on behalf of the SSA. Docket No. 13 at 12–13; Docket No. 15 at 4. Having determined that remand is warranted on other grounds, we decline to address this larger issue. Similarly, we decline to address any alleged error related to medical evidence of other conditions, such as osteomyelitis.

## IV.  CONCLUSION

Having reviewed *de novo* the Magistrate Judge's analysis and conclusions, we hold that the ALJ's RFC analysis failed to adequately consider all of Leonard's severe and non-severe impairments, the objective medical evidence, his symptoms, and his credibility. Accordingly, the Magistrate Judge's Report and Recommendation [Docket No. 19] are hereby **ADOPTED**. We hold that the Commissioner's decision that Leonard was not disabled must be **REVERSED** and this cause **REMANDED** to the Social Security Administration for further proceedings in accordance with this decision.

IT IS SO ORDERED.

Date:  9/27/2023

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

Jennifer Latstetter Dunn
Dunn Law, PLLC
jdunn@dunnlawfirmpllc.com

Jane Kuczek
Social Security Administration
jane.kuczek@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov